And we'll call our next case, which is Delaware River&Bay Authority v. Kopacz. Good morning, Your Honors. May it please the Court, my name is Mary Lisa Reeves and I represent the appellant, Delaware River&Bay Authority, who I will refer to also as the RBA. And I'd like to reserve five minutes for rebuttal. That's a lot of time. All right, that's fine. Let me begin with two basic tenets of the law of maintenance as set forth in this Court's opinion in Barnes. First, the purpose of maintenance is to provide the seaman with the cost of food and lodging while, of the quality, similar to the quality he received when he was provided to the seaman by others. And those others can specifically include his family or friends or anyone who provides food and lodging to him. But doesn't it have to be provided qua maintenance, in other words, as maintenance? So someone provides him, you know, the parents take him in when he's sick and they provide the home for him and feed him. They have provided maintenance. I can find no authority for the proposition that if he gets wages, which he could have used to provide for his food and lodging, that that satisfies maintenance. Can you help me with that? Well, Your Honor, there may not be a specific case with specific language to that effect is what you're saying. But the whole purpose of maintenance as enunciated by this circuit in Supreme Court is to make sure that he has the income or the funds with which to pay his food and basic living expenses. With which to pay? See, that's that's a proposition that I don't see. Now maybe you're asking us to say, after hundreds of years with this theory of maintenance, that we may take that step, especially this case where I think his maintenance was within two dollars of the money he got under the disability premium. I mean, the amount that he would have gotten in maintenance was very close to what he got in wages. But, I mean, I just, you're asking us, I guess, to make that pronouncement because I can't see it specifically stated. Yes, Your Honor, and looking at, yes, I am, and looking at all the case law as a whole, the case law really asks the courts to look at each case by case basics with the primary goal of making sure that he can meet his living expenses. And I understand that it's not pleasant to have to live on money that only pays your living expenses. But that is what maintenance is designed to do. It's not compensatory. It is a way to make sure that a seaman can meet those expenses. And it just makes no sense to me that if family provides room and board or the funds to pay room and board to the seaman, then the seaman doesn't have the obligation to pay maintenance. But if the seat, or the shipowner doesn't have the obligation to pay maintenance. But if the shipowner himself buys an insurance policy and pays full wages for the really, those two things don't jive. If a family member paying means the shipowner is relieved, then the shipowner paying, I believe, should mean the same thing. Maybe as a policy matter. Maybe we should hold that as a policy matter. Otherwise, we would be encouraging the seaman to spend his, the wage money on a big screen TV and letting the shipowner pay, you know, his room and board, essentially. That's correct, Your Honor. And in fact, one point I wanted to make is that, for example, in this case, for the first 90 days, full wages were paid. Under the argument that wages are wages and maintenance has to be paid exactly as maintenance, well then a shipowner who paid wages the whole time, a seaman is disabled, which is not completely unheard of, unusual, but not unheard of. Under this argument, well then, he'd better pay maintenance on top of the wages. And that simply doesn't make any common sense, and it's not equitable. Well, you may have a strong policy argument, but as you're aware, we are not free to depart from prior precedents of this court. How do you distinguish the Shaw case? Isn't it directly on point against you? I don't think so, with respect, Your Honor. The reason is there was a specific factual distinction in Shaw that the court made. And in Shaw, the long-term disability benefits were a part of the wage package that had been negotiated by the union, and that was in the union agreement. And in fact, the court, specifically in distinguishing between Blue Cross Blue Shield benefits and the prudential long-term disability benefits in Shaw, said that the difference was that the former provided exact equivalent of cure, whereas the latter, quote, at least under this collective bargaining agreement, constituted a substitute for lost wages owed to the seaman. In this case, the payments of long-term disability were voluntary. The only thing the union agreement said was that the merchant seaman were to get the same benefits provided to everybody else that worked for the authority, because the DRBA has both land-based and seaman. And in essence, this had been paid long-term disability long before the union came into effect. So this was a voluntary payment. But doesn't Shaw really say, I mean, it says there's no provision specifying that the payments from the insurance company under the benefits plan would be in lieu of maintenance. Doesn't Shaw say that if you're paying wages and you're going to say they're maintenance, there has to be some meeting of the mind, some agreement that that is taking over your maintenance obligation? Your Honor, yes. And our position is that there was an agreement. It just wasn't in writing in the union agreement. Here, there was an agreement? All the testimony in the record reflects in the court below that all seamen have accepted long-term disability benefits in lieu of maintenance. And I mean, this is going back 25, 30 years. But that doesn't buy him. He accepted them for two years. I'm exaggerating. He didn't specifically waive his right to a certain amount. He accepted them for a year. He received a letter from us saying, this is how we handle it. And he received those benefits. He accepted them for a year. And it wasn't- He was entitled to those benefits. He's not claiming those benefits. He's claiming maintenance. He was entitled to what he got, right? Under- Yes, he was entitled to those benefits. But he wasn't entitled to both, is our position. And he understood at the outset that he wasn't going to be paid both. Well, where is it in the record that his understanding is a waiver or some binding obligation or some, you know, prohibition on his getting the maintenance? There is no written agreement to that effect. It is our position that Shaw doesn't say there has to be a written agreement. Shaw says, for example, cites with approval Humble Oil and says Humble Oil says that if you have such an agreement, then it is okay. All right, what are the components of the agreement here? That all seamen understood that they would receive their long-term, if eligible, long-term disability in lieu of maintenance. And that was to keep everything equal with the shore-based people. Shore-based people get, if they're hurt on the job, get workers' compensation. They do not get both workers' compensation and long-term disability. And they're eligible for long-term disability, too. But the basis upon which you say all understood is that nobody other than Mr. Kopecks sued you. Nobody complained in any way. Okay. And Mr. Kopecks did not complain until a year and a half into it when the Social Security issue came up. Counsel, was the employee in the Shaw case like Mr. Kopecks in that he lived at home and ate at home and did not receive lodging and food on ship? No, Your Honor. The employee in the Shaw case worked on a tugboat and would work, as I understand it, two weeks on and two weeks off and did receive food and lodging on the ship. And that is a good point that here we have a commuter seaman. Now, this Court has not dealt with that problem in a published opinion other than the dicta. Other than the dicta in Barnes.  We need to give him something, even the commuter seaman. I would like to just close, but for my rebuttal, with the idea that Vaughn in Supreme Court and Gooden have both indicated that equity is to be done. The maintenance cases are to be looked at on a case-by-case basis to make sure that the seaman is taken care of with no double recovery for him or no double burden on the ship owner. And in fact, the Ninth Circuit case in Gibson, I would just like to read this, that maintenance and cure is one of a number of private and public means directed to rescuing the injured seaman and making him whole. Ultimately, each involves a flow of wealth from society to the injured individual. And it is desirable that all be viewed as parts of an integrated system and applied in a way which will avoid disproportionate recoveries to particular individuals, whether high or low. But that court went against you. It did, but the disability payment did not reduce maintenance and cure. That is because that was a disability payment that was funded primarily by contributions by the seaman himself. And this is a different scenario. All right, we'll hear from him. Thank you. Good morning, your honors. My name is Smith, and I represent Mr. Kopax, who is the appellee in one of the cases before your honor, and the cross-appellant in the other. Were you the attorney who figured out that after two years he could still try to get maintenance? I'm sorry? Were you the attorney who suggested to him after he received disability payments for two years that he could also get maintenance? Well. I'm trying to give you credit here. I've represented Mr. Kopax for a long time. All right. And it wasn't until the Social Security issue came up that this problem came to the surface. Well, you don't have the Social Security problem now, do you? They're not going to try to get the money back from him. Who? Kopax. What happened was that he received a lump sum payment from Social Security of about $17,000. And Hartford, the long-term disability carrier, immediately asked for a repayment of $16,000, which it attributed to Social Security payments during the period that he was also getting disability payments. And he refused, on my advice, he did not repay that to Hartford. And I contended that the RBA should pay it to Hartford. And that would enable his long-term disability payments to continue. Now, he was entitled to long-term disability payments for quite a period after that. And Hartford said, we will suspend your payments until we have received, by not paying you, an amount equal to the $16,000 that we contend that you owe. So they stopped paying him for another year. And then a year later, they discontinued his benefits completely. And as of the time that they discontinued his benefits completely, they had not recouped $4,000 of the original $16,000 that they sought. Am I being clear? Yes, I probably shouldn't have asked the question. But why don't we, why don't you address the equity here and the fact that he's received, the employer said, I'm going to take care of you if you're disabled. I'm paying this premium so that everybody will have their wages if you are disabled. He receives the wages, the employer, it's like no good deed goes unpunished. He provides enough money for him to pay his own maintenance. And then Mr. Koppaz says, aha, I've got this case law that says, you know, I'm entitled to maintenance, give me maintenance. Aren't we going against the equities of the situation? And isn't this kind of gone to the extreme in terms of providing for the seaman? Not really, Your Honor, for this reason. Under the Hartford policy, Hartford is entitled to recover back from Mr. Koppaz the payments that it has made if one of three contingencies occurs. One, if Mr. Koppaz receives Social Security benefits. That is clearly an, quote, other benefit under the, unquote, under the policy. And it was under that provision that Hartford sought to recover the $16,000. The second is that if Hartford made a mistake. Now, when Mr. Koppaz first started getting long-term disability payments, I wrote to Hartford and I said, in effect, DRBA has an obligation to pay this man maintenance and it's just about the same as your monthly benefit. And other insurance companies who had provided this coverage to DRBA deducted maintenance payments from their disability payments. And if you do that, you won't have to pay Mr. Koppaz anything. And they said, we don't consider maintenance payments to be other benefits. Well, I wrote back and said, will you agree that by accepting these benefits, Mr. Koppaz is not committing insurance fraud? Well, they would never agree to that. And I wanted them to also agree that they would never consider that position to be an error. And they never did. And under the policy, they're entitled to recover back from Mr. Koppaz any payments that they make to him in error. And the third, the third provision of the policy is extremely important. And that provides that another benefit is any recovery made by Mr. Koppaz, either by judgment or settlement in a suit under the Jones Act or other similar law. Well, we have a suit pending in the state court in Delaware, and we have claimed in that suit loss of wages, impairment of future earning capacity, and so forth. So all this policy did was put off until the resolution of the state court, what Mr. Koppaz would be obligated to repay to Hartford. So that these payments under the long-term disability policy are not really maintenance payments. They're just loans, so to speak, against the day when Mr. Koppaz makes a recovery in the state court action under the Jones Act. Then it would clearly be an other benefit, so to speak, that Hartford could claim and recover back from Mr. Koppaz. So. But maybe your claim for maintenance, as long as he's getting the money and until there's a claim by Hartford to get it back, maybe your claim for maintenance is not ripe until Hartford takes the maintenance, if we were to say the wages were the equivalent of maintenance. Are you saying it doesn't work strictly because there's an obligation to give it back, or are you saying the character of the payment is such that it's not maintenance? Well, I'm saying two things. One, Shaw was correctly decided, as pointed out by Judge Stapleton. And under the Shaw case, there's no doubt, in my opinion, that they are not entitled to credit under the, for the long-term disability payments. And the other is that the payment under the long-term disability policy was never intended to be a maintenance payment. And as I indicated, the receipt of those payments simply put off until a recovery is made in the state court action, who is really going to end up paying the maintenance obligation, whether it's going to be Hartford or the RBA, because of the right of Hartford to get back from Mr. Kopach the amount that it paid for his disability. Am I being clear, Your Honor? Is what you're saying that the insurance policy is not, in the words of some of the cases, tailored to the maintenance responsibility? Absolutely, Your Honor. And it was never intended to be. The conditions of the policy make it totally inappropriate to satisfy a maintenance obligation because of the repayment provisions. Now, our real interest in this appeal, Your Honor, is the fact that Judge Robinson denied a recovery for consequential damages and counsel fees. And so far as consequential damages are concerned, we contend that a finding that maintenance was wrongfully held, withheld, and not paid is the equivalent of a finding of unreasonableness, which automatically entitles the seaman to a recovery of consequential damages. We don't think that there has to be a separate finding of unreasonableness, apart from the fact that maintenance was not paid when it was due. Now, if that position is correct, and we think that, as pointed out in our brief, that that has been the rationale of the cases, at least that's been my understanding for the last 40 years, then consequential damages for the failure to pay maintenance should have been awarded by Judge Robinson to Mr. Kopach.  I'm sorry? No one else had claimed maintenance. Doesn't that, shouldn't that factor in as to whether it was unreasonable or not to hold back on the maintenance? Well, there's nothing unique about this particular claim because the Shaw case disposed of the consention that DRB made at the time that it started to. And that was, we're entitled to our credit for the long-term disability payments, and that in addition to the Social Security payments are enough to cover maintenance obligation. And Shaw, it seems to me, destroyed that, and therefore the Shaw decision destroyed any rationale whatsoever for starting this lawsuit. Well, Shaw could have been, could be read to say, where you have a collective bargaining agreement, you really have to, you know, and you're providing a payment pursuant to the bargaining agreement. If you want to claim that it's in maintenance, you have to say so. It might be limited to its facts. I'm sorry? It might be limited to its facts as to whether there is a collective bargaining agreement that provides for the disability policy. Well, I don't think that there's any doubt in this case that Shaw applies and destroys any contention that DRBA was entitled to our credit for the LTD payments. And consequently, I submit that there was no basis whatsoever for starting this lawsuit against Mr. Kopach. Mr. Kopach didn't start suit. They did. And Mr. Kopach was therefore forced to retain counsel in order to defend himself and attempt to collect what was rightfully his. And the last point was the fact that Judge Robinson denied a recovery for counsel fees. And the law is clear that in order to recover for counsel fees, the shipowner's conduct in failing to pay maintenance has to be shown to have been callous or recalcitrant. And that provision is written in the disjunctive so that a seaman only has to prove one or the other but not both. And we contend that DRBA's repeated failure to pay any maintenance and its appeal after an adverse decision by Judge Robinson shows not only callousness, but also recalcitrance. And before the suit was started, a settlement offer was proposed by DRBA's counsel, but that contemplated that DRBA was going to file a suit anyway. So even if Mr. Kopach had accepted those terms, which in my opinion were overreaching in any event because they required a written agreement to repay in the event the lawsuit that was contemplated was successful, in no case that I'm familiar with requires a seaman to repay maintenance wrongfully paid by a shipowner. Let me go back a minute. And what do you say is the test for whether consequential damages are available to your client here? You say Judge Robinson wrongfully denied it. That's correct. But what is the stand? What had to be shown? What did you have to show in order to be entitled to consequential damage? The fact that that maintenance was wrongfully withheld. That's all. That's correct. And what authority do you cite for that? Well, the issue was presented in Deisler, which is a decision by Judge McKee. But it wasn't resolved in Deisler because, as Judge McKee said in the Deisler opinion, that it didn't have to be decided because the facts of Deisler showed beyond any doubt, in his opinion, which I think was correct, that the failure to pay maintenance under the facts in Deisler was unreasonable. So what the court said, what this court said in Deisler was that even though the rule is written that in order for consequential damages to be awarded, there has to be a showing that the shipowner's conduct was unreasonable in not paying maintenance. And our position is that a finding that maintenance was wrongfully withheld and not paid implicitly means that the shipowner was unreasonable in not paying it. There doesn't have to be a separate inquiry into the conduct of the shipowner in not paying to determine whether or not... The test is whether the failure to pay was reasonable or not. That's correct. Once the decision is made that maintenance should have been paid but wasn't, we contend that that implicitly holds that the shipowner's failure to pay was unreasonable. All right. I think Judge Alicorn has a question. Yes, sir. Counsel, I need your help on this problem. It's not clear to me why Mr. Kropach is entitled to maintenance. It seems to me that looking at the doctrine of maintenance, it developed because there were sailors on ships that went from port to port, and if they were disabled, they could be put ashore and not have food and lodging, which they received on the ship. Mr. Kropach is, in a sense, a day labor employee who did not receive food and shelter on the ship. Why is he entitled to that as maintenance? That was discussed at considerable length by Judge Sloater in the Barnes opinion. But it was dictum there, wasn't it? Well, in the strictest sense of the word, it can be argued that her comments were dictum. However, she considered it necessary in order to resolve the Barnes case to make that discussion. But her case involved the sailor who is on ship and goes from port to port overnight. Well, that's correct. That's correct. An argument can be made that the wages paid to shoreside seamen, so to speak, are adjusted in order to enable them to pay for their own board and lodging. Why isn't that true? If you negotiate as a day laborer to work for somebody, you hope to get enough money so that you pay for your lodging and your food. Well, all I can say, Your Honor, is that I understand the argument. And for 30 years, I was a defense lawyer and made that argument unsuccessfully. But now I'm on the other side and now I see the wisdom of all the losses I suffered. Thank you for your candor. But pre-judgment interest is you're seeking pre-judgment interest as well here? Yes, ma'am. On what basis? There again, in the Dysker opinion, the opinion by Judge McKee, the court, this court said quite clearly that interest pre-judgment interest must be paid. It was mandatory, in Judge McKee's opinion, that pre-judgment interest be paid in order to fully compensate the seaman for his loss. If it's compensatory, not punitive, basically. That's correct. And in this case, the pre-judgment interest awarded by Judge Robinson was about $2,000. Of course, he never asserted the right to maintenance for a long time. He never asserted the right to maintenance for a long time. Well, he didn't. Ten years. The argument that was made before Judge Robinson was that we were attempting to get a double recovery. And Mr. Kopach never made any effort whatsoever to get a so-called double recovery because all he did was accept the LTD payments and all that did was defer the issue until the resolution of the state court case. So we were not being piggish, so to speak. Mr. Kopach wasn't being greedy. He was simply accepting what he was given until the day of judgment came along. Thank you. Thank you very, very much, Your Honor. Thank you. Thank you. Your Honors, I have a few issues to address. I'm going to start with what I feel is the least challenging issues, and that's the consequential damages, attorney's fees and interest. Essentially, we don't believe there are any of those would be appropriate here. We believe the O'Connell case, which is this Third Circuit's opinion, has said you do need a finding of unreasonableness in order to award consequential damages. Judge Robinson found that the DRBA's conduct was reasonable, and you would need to find that that decision was clearly erroneous. Attorney's fees, the standard would be abuse of discretion. Clearly here, I don't think that there can be any problem with bringing a declaratory judgment action when it was demanded that we pay the Hartford back the $16,000. We did say no. We offered to negotiate. Perhaps we'd pay, and then as long as we could get paid back once this court or the district court made a determination. But there's nothing wrong with filing a declaratory judgment action in order to have our responsibilities clarified, which is what we were doing here. Interest here would be punitive. Often it's not. If no maintenance has been paid at all, and there's no money coming in at all, then interest would be appropriate. We find that it's not appropriate here because he did have the money, and as you indicated, he did not assert the right very early on. He is a commuter seaman, and as Judge Ellicott pointed out, he was always paying his room and board out of his wages. So I think that that argument that the LTD is a wage and not room and board is a specious one. Mr. Smith has also talked about the setoffs that the Hartford policy required. Now, we know that that isn't before the court anymore because the Hartford has completely waived any right to recover anything from the state court case, et cetera. But even if that wasn't the case, that issue isn't ripe at this point. I think your point is well taken. But doesn't it impact the character of the money he received? I mean, maintenance is to be paid and used for lodging and to be kept. The concept that it's returnable if you get social security disability or if you get compensation for injury from some other source makes it seem more like compensation for injury, not something that you're supposed to have in lieu of wages. Well, Your Honor, I submit that that is something that would be determined by the state court. If the state court said that, found that the Jones Act would have to be paid back, then I think that may be something that the would either, the maintenance would either have to be paid back either to the Hartford, if the Hartford had put out the money. Or if it's part of wages, then it would be paid back to the DRBA as an offset of the DRBA's judgment. If there was a judgment, assuming there was a judgment. So I don't think it affects the character. And all of these arguments are assuming that there is social security or assuming that there's a Jones Act judgment. And in this particular case, again, I feel like the law said the cases have to be looked at case by case. Mr. Kopec testified he would never have applied for social security, but for the fact that the long term disability carrier made him do that. And he agreed to do that. That's the only reason he applied for social security. So I think it falls under the same umbrella as the long term disability. The last thing I want to say is that, in fact, in this case, as I had said before, under the logic of Mr. Kopec's argument, full wages paid for the disability undertaken to its logical conclusion, then the DRBA would also owe maintenance on top of that. And that really wouldn't make any sense because the seaman would be making more home recovering than he would at sea working. And in fact, in this case, if you look at the appendix at page A157 is Mr. Kopec's tax returns from 2004, the full year he worked. If you divide that by 12 months, multiply it by the 27 month period during which he was entitled to maintenance, he would have earned $96,000 while working. If you look at my chart on page 7 of my opening brief or appendix 229, it's undisputed that he received $63,500 from these sources, the DRBA, social security, and long term disability. Now the ship owner, excuse me, the ship owner can avoid this result by having an agreement for him to waive maintenance in light of the fact that he's supplying this disability policy. Or just not supply the disability policy knowing he's going to have to pay maintenance. Well that's correct and that's what's going to happen in the future if that's what this court decides. But the ultimate, and we believe there was a tacit agreement, but the ultimate responsibility, and my timing is up, is that if the district court's judgment is affirmed, he will receive an additional $50,000 or a total of $113,000 for that 27 month period. Which is more than he would have been making when he was working and that frankly that is an inequitable result that shouldn't be countenanced. Thank you. Thank you counsel. Case was very well argued. We'll take it under advisement. Ask the clerk to